**Opinion issued June 15, 2021**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-19-00799-CV**

———————————

**ROBERT LAWRENCE, Appellant**

**V.**

**JOE W. BAILEY II, ADMINISTRATOR OF THE ESTATE OF STEVEN ROSS LAWRENCE, DECEASED, Appellee**

---

**On Appeal from County Court at Law No. 3**
**Fort Bend County, Texas**
**Trial Court Case No. 15-CCV-054719**

---

**MEMORANDUM OPINION**

This is a dispute over life-insurance proceeds paid on a policy belonging to the deceased, Steven Lawrence, and interpleaded into the trial court's registry. Steven's brother, Robert Lawrence, filed a claim for the insurance proceeds, asking the court to render a declaratory judgment determining that Robert was entitled to

the proceeds. The administrator of Steven's Estate, Joe W. Bailey II, filed a motion asking the trial court to release the interpleaded funds to him on behalf of Steven's Estate. The trial court granted the motion and signed a dispositive order awarding the interpleaded funds to Steven's Estate, care of the administrator, and closing the account in the court's registry. Robert appeals the order.

Among his issues on appeal, Robert contends that the trial court abused its discretion when it denied his motion for new trial. In his motion, Robert asserted that he was denied due process with respect to the rendition of the dispositive order awarding the interpleaded funds to Steven's Estate because Robert did not receive notice of a hearing or submission of the administrator's motion before it was granted. Because we agree with Robert that the trial court abused its discretion in denying his motion for new trial, we reverse the trial court's order awarding the interpleaded life-insurance proceeds to Steven's Estate and remand the case to the trial court for further proceedings.

## Background

In January 2008, Hartford Life and Accident Insurance Company (Hartford) issued a life insurance policy to Steven Lawrence. Steven named his wife, LaQuita, as the primary beneficiary under the policy and named their adult son, Ross Lawrence, as the contingent beneficiary.

2

On October 25, 2015, Steven and LaQuita were killed at their home in Fulshear, Texas. Their deaths were determined to have been caused by blunt force trauma and were ruled homicides. Ross was soon indicted for the offense of capital murder for killing his parents.

On March 24, 2015, Hartford initiated the instant suit by filing a petition seeking interpleader. Identifying them as "claimant-defendants," Hartford named the following persons in its interpleader petition: (1) Steven's brother, Robert Lawrence; (2) Steven's son, Ross; (3) LaQuita's mother, Jerry Balderree; (4) the administrator of Steven's and LaQuita's Estates, Joe Bailey II; and (5) the missing and unknown heirs of Steven's Estate.

In its petition, Hartford asserted that "[a] party is entitled to relief by interpleader if the party is subject to or has reasonable grounds to anticipate rival claims to the same funds or property." Hartford pointed out that the contingent beneficiary under the life-insurance policy, Ross, had been charged with murdering both the insured, Steven, and the policy's primary beneficiary, LaQuita. Hartford stated that the criminal case against Ross was pending.

Citing statutory provisions commonly referred to as "the Slayer Statute,"[1] Hartford stated that, "[u]nder Texas law, a beneficiary of a life insurance policy or

---

[1]     Although referencing the "Slayer Statute" in the singular, we include both Insurance Code sections 1103.151 and 1103.152 in the reference. *See* TEX. INS. CODE §§ 1103.151, 1103.152.

contract forfeits his interest in the policy if the beneficiary is a principal or an accomplice in willfully[2] bringing about the death of the insured." *See* TEX. INS. CODE §§ 1103.151, 1103.152. Hartford asserted that Ross "may have forfeited his claim to the proceeds of the policy because he reportedly caused the deaths of the Insured [Steven] and Mrs. Lawrence." Hartford claimed that "[d]ue to the unique facts and circumstances of this case, there are reasonable grounds to anticipate rival claims" to Steven's life-insurance benefits. Hartford offered the life insurance policy and Steven's designation of beneficiaries in support of its interpleader petition. Hartford deposited the life insurance proceeds, which totaled $640,035.06, into the registry of the court.

On July 29, 2015, the trial court signed an order granting the petition in interpleader and ordering that Hartford was "discharged with prejudice from this lawsuit" and "relieved from all claims to the proceeds." The trial court also awarded Hartford its attorney's fees from the life-insurance proceeds and ordered that "[the] case shall continue on the merits between Claimants-Defendants to determine their respective rights to the proceeds" held in the court's registry.

---

[2]      Insurance Code section 1103.151 uses the spelling "wilfully," rather than "willfully." We will use the Insurance Code's spelling of "wilfully," unless directly quoting from a party's filing.

The defendant-claimants, including Robert, each appeared by answering Hartford's petition with a general denial. The record shows that the case was inactive until the spring of 2019 when the trial court warned the parties that the case may be dismissed for want of prosecution. Robert's counsel filed a motion to withdraw, which was granted, and his new counsel filed an appearance.

Robert soon filed a motion for traditional summary judgment. He argued that, based on the Slayer Statute, he was entitled to the life-insurance proceeds as a matter of law. Robert pointed out that the Slayer Statute provides, "A beneficiary of a life insurance policy or contract forfeits the beneficiary's interest in the policy or contract if the beneficiary is a principal or an accomplice in wilfully bringing about the death of the insured." TEX. INS. CODE § 1103.151. "A contingent beneficiary is not entitled to receive the proceeds of a life insurance policy or contract if the contingent beneficiary forfeits an interest in the policy or contract under Section 1103.151." *Id.* § 1103.152(b).

Robert asserted that Ross, the contingent beneficiary under the policy, had forfeited his right to the life-insurance proceeds because Ross had wilfully killed Steven. As summary-judgment evidence, Robert offered Steven's and LaQuita's death certificates, which state that the manner of their deaths was homicide caused by "trauma inflicted by [another]." Robert also offered Ross's indictment, showing that Ross had been charged with Steven's capital murder. In addition, Robert offered

5

the affidavit of Steven's and LaQuita's neighbor. In his affidavit, the neighbor testified that he witnessed Ross beat Steven and LaQuita to death in their driveway with a sledgehammer. Robert asserted that the summary-judgment evidence established that Ross had "wilfully" brought about Steven's death.

Robert further pointed out that, if there is no beneficiary or contingent beneficiary entitled to receive the proceeds of a life insurance policy, "the nearest relative of the insured" is entitled to receive the proceeds. *Id.* § 1103.152(c). Robert claimed that he was Steven's nearest relative, aside from Ross who was not entitled to the proceeds under the statute. To prove he was Steven's "nearest relative," Robert offered his affidavit in which he testified that (1) he was Steven's only sibling; (2) Ross was Steven's only child; and (3) Steven's and Robert's parents were deceased. Robert concluded his motion for summary judgment by summarizing his argument that he had established, as a matter of law, that under the Slayer Statute, the life-insurance proceeds must be paid to him, Steven's nearest living relative, because Ross had forfeited the proceeds by wilfully causing Steven's death.

A hearing was scheduled for Robert's motion for summary judgment. None of the other parties filed a response to Robert's motion. However, Steven's unknown heirs and Ross, through their ad litem attorneys, filed special exceptions to Robert's motion. In the special exceptions, they complained that, while Robert had answered Hartford's interpleader petition, he had not pleaded an affirmative claim to the

6

insurance proceeds. They asserted that, without a claim, Robert could not obtain the interpleaded funds by summary judgment.

Robert then filed a claim to the insurance proceeds, seeking a declaratory judgment that he was entitled to the proceeds under the Slayer Statute. The attorney ad litem for the unknown heirs amended the special exceptions, requesting Robert to refile his declaratory-judgment claim because the claim failed "to name the Defendants in that action appropriately so that those Defendants may file their Answers and other pleadings as may be appropriate."

On July 8, 2019, the trial court conducted a hearing on the special exceptions. The attorney ad litem for Steven's unknown heirs argued that Robert's declaratory-judgment action constituted a new suit and that the other parties "should have an opportunity to file their answers, do whatever pleadings or discovery they want to do." Ross's attorney ad litem asserted that Robert's summary-judgment evidence had not shown that Ross had wilfully killed his parents. The attorney ad litem also indicated that Ross had been in a mental health facility for some time and that "there [are] no indicators that [Ross] is going to leave [the facility] at any time in the near future."

Robert acknowledged the other parties' desire to conduct discovery. He stated that he was "certainly not going to oppose that" but expressed that he wanted the court to issue an order "to move the case forward." At the end of the hearing, the

7

trial court ruled that it was granting the special exceptions and denying Robert's motion for summary judgment. The court indicated that whether Ross had "wilfully" brought about Steven's death, as required by the Slayer Statute, was the "main aspect" needing determination. The court stated, "We're going to move forward with trying [the case]. I have dates available beginning next year."

On July 12, 2019, the trial court signed a docket control order, setting trial for March 17, 2020. That same day, the trial court's coordinator emailed the parties, attaching the docket control order. In the email, the court coordinator stated, "Please be advised that this matter is set for a pre-trial conference on March 13, 2020 at 1:30p.m. and for jury trial on March 17, 2020 at 11:00 a.m."

One month later, on August 16, 2019, the administrator of Steven's Estate filed a "Motion to Close and Distribute Funds in Registry of the Court to the Estate of Steven Ross Lawrence, Deceased." The one-page motion contained no legal argument to support awarding the life-insurance proceeds to the estate nor did it contain any citation to legal authority. The motion simply requested the trial court to grant the motion and to sign an order authorizing the court's clerk "to pay the balance" of the life-insurance proceeds remaining in the court's registry to the administrator of Steven's Estate. The only exhibits attached to the motion were two receipts from April 2015, issued to Hartford by the court's cashier, indicating that the insurance proceeds had been deposited in the court's registry.

On September 25, 2019, the trial court signed an "Order on Motion to Close and Distribute Funds in Registry of the Court to the Estate of Steven Ross Lawrence, Deceased," granting the administrator's motion. The order required the county clerk to "close out the account" that had been opened in April 2015 when Hartford had deposited $640,035.06 into the court's registry and ordered that the interpleaded funds in the account, including the accrued interest, be paid to Steven's Estate care of its administrator.

Robert filed a motion for new trial. He alleged that the trial court "spontaneously granted" the motion to distribute the interpleaded funds to Steven's Estate, "without a hearing or notice" to him. Robert asserted that "[t]his was a fundamental violation of Robert's right to due process." He asked the trial court to vacate the order awarding the interpleaded insurance proceeds to Steven's Estate and grant him a new trial.

The assertions in Robert's motion for new trial were supported by the affidavit of his attorney, Scott Kitner. In his affidavit, Kitner testified that, on July 23, 2019, he had served discovery requests on Ross's attorney ad litem. On August 27, Kitner emailed the attorney ad litem, inquiring why he had not responded to the discovery within 30 days, as required by the Rules of Civil Procedure. The next day, the attorney ad litem responded that he had not answered the discovery requests because the estate's administrator had filed the motion to distribute the funds the previous

9

week. Ross's attorney ad litem stated to Kitner, "We were told that the case was not going to proceed pending the hearing on this motion. If the motion is denied and the case proceeds, we will answer your discovery."[3]

Kitner also testified in his affidavit that this "was the first indication to Robert that the Court was considering [the administrator's motion to award the interpleaded funds to Steven's Estate] as grounds for a stay of trial, as neither Robert nor his counsel had previously received any notice from the [trial court] or any other party." Kitner stated that, on August 30, 2019, he "discovered that on August 16, 2019, the [trial court had] made a docket entry reciting, 'Stay in regard to the trial pending on March 17, 2020.'"

Kitner further testified that the estate's administrator "never requested" the trial court "[to] schedule a hearing" on his motion to distribute the interpleaded funds to Steven's Estate, "nor did [the administrator] request the [trial court] to consider it by submission, nor did he (or the Court, or [Ross's attorney ad litem], or anyone else) ever provide any sort of notice to Robert or his counsel" that the administrator's motion to distribute the interpleaded funds "would be considered by the [trial court] at any particular time."

---

[3] The record reflects that, on September 3, 2019, Ross's attorney ad litem filed Ross's responses to Rule of Civil Procedure 194 requests for disclosure.

Kitner stated that, "[o]n September 25, 2019, without any hearing or notice to Robert or his counsel, and with no acknowledgement or lifting of the 'stay,' the [trial court] spontaneously granted [the estate administrator's motion]." Kitner averred that the order "awarded all the insurance proceeds to Steven's Estate, thereby, adjudicating all factual and legal issues in the case—apparently including the fact issue regarding the 'willfulness' of Ross's conduct under the Texas Slayer Statute, [which] the Court had previously identified as requiring a trial on the merits." Kitner stated that the trial court's "probate auditor" emailed him. The email forwarded the order granting the administrator's motion to distribute the interpleaded life-insurance proceeds to Steven's Estate and to close the account in the trial court's registry. The email, attached to Kitner's affidavit, stated that "[t]here will not be any further hearings as this Order effectively finalizes the issue before the Court on Hartford v. Lawrence and closes this pending civil case. All previous trial settings are cancelled."

Robert's motion for new trial was filed on Friday, October 4, 2019. The trial court signed an order denying Robert's motion for new trial the next business day, Monday, October 7, 2019.

Robert now appeals the trial court's order granting the administrator's motion and ordering the interpleaded life-insurance proceeds be paid to Steven's Estate care

11

of its administrator.[4] Robert challenges the order in three issues. He contends that (1) the administrator for Steven's Estate failed to establish the estate's right to the life-insurance proceeds, (2) the trial court deprived Robert of due process, and (3) the trial court abused its discretion in denying Robert's motion for new trial.

## Standing

As a threshold matter, we consider the argument—raised by the administrator for Steven's Estate for the first time on appeal—that we lack jurisdiction because Robert did not have standing to bring his declaratory judgment claim, which sought a declaration that he was entitled to the life-insurance proceeds under the Slayer Statute.

### A.     Legal Principles

A party's standing to seek relief is a question of law we review de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). Because it is a component of subject matter jurisdiction, standing cannot be waived and may be raised for the first time on appeal. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018). "When constitutional standing is raised for the first time on appeal, the test must be lenient because there is no opportunity for the plaintiff to cure a pleading defect." *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616

---

[4]     Because its effect was to dispose of the claims to the life-insurance proceeds and all parties, the order is a final judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195, 205–06 (Tex. 2001).

S.W.3d 558, 567 (Tex. 2021) (internal quotation marks and brackets omitted) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). In determining whether a plaintiff has standing, we must construe the record liberally and resolve any doubt in his favor, *id.*, and if necessary, review the entire record to determine if any evidence supports standing, *Tex. Ass'n of Bus.*, 852 S.W.2d at 446.

"The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). The doctrine of justiciability is rooted in two provisions of the Texas Constitution: the separation of powers provision and the open courts provision. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 147 (Tex. 2012). The separation of powers provision prohibits courts from issuing advisory opinions, and the open courts provision contemplates access to the courts only for those litigants suffering an injury. *See Meyers*, 548 S.W.3d at 484; *Heckman*, 369 S.W.3d at 147. Thus, standing requires a real controversy between the parties that will be determined by the judicial declaration sought. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. To have standing, a party must be personally aggrieved, meaning "his alleged injury must be concrete and particularized, actual or imminent, not hypothetical." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 580 (Tex. 2013). And his injury must be "likely to be redressed by the requested relief." *Heckman*, 369 S.W.3d at 154.

13

Under the Uniform Declaratory Judgments Act (UDJA), a person interested under a written contract or "whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE § 37.004(a). A declaratory judgment is appropriate only if a justiciable controversy exists concerning the rights and status of the parties, and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *see Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 882 (Tex. App.—Austin 2010, pet. denied) (stating plaintiff has standing to assert claim under UDJA when there is "a particularized, legally protected interest that is actually or imminently affected by the alleged harm").

## B. Analysis

In his pleading for declaratory relief, Robert cited the Slayer Statute. He asserted, "Under the Texas Slayer Statute, a beneficiary of a life insurance policy or contract forfeits the beneficiary's interest in the policy or contract if the beneficiary is a principal or an accomplice in willfully bringing about the death of the insured." *See* TEX. INS. CODE. § 1103.151. He pointed out that, "[i]f there is no contingent beneficiary entitled to receive the proceeds of a life insurance policy or contract, the nearest relative of the insured is entitled to receive the proceeds." *Id.* § 1103.152(c).

14

In support of his claim for declaratory relief, Robert alleged the following underlying facts: (1) Steven had a life insurance policy, which paid $640,000 upon his death; (2) Steven had named his wife, LaQuita, as the primary beneficiary under the policy and had named their adult son, Ross, as the contingent beneficiary; (3) "Ross killed Steven and then Laquita," as confirmed by eyewitnesses testimony "that Ross beat Steven to death with a sledgehammer and then beat LaQuita to death in the same manner"; (4) Steven's and LaQuita's deaths were ruled homicides caused by blunt force trauma; (5) "Ross was indicted for capital murder for killing Steven and LaQuita"; (6) "Hartford initiated this interpleader action to resolve ownership of the Life Insurance Proceeds"; (7) Hartford paid the insurance proceeds into the court's registry; (8) the trial court "granted Hartford's interpleader, discharging it from the lawsuit with prejudice" and "ordered that this case shall continue on the merits between Claimants-Defendants [including Robert] to determine their respective rights to the Life Insurance Proceeds"; (9) "Robert is Steven's brother"; (10) "Steven has no other siblings or children"; (11) "Steven's parents are deceased"; and (12) "Robert is Steven's nearest living relative except for Ross."

Based on the alleged facts, Robert requested the trial court to "declare" that (1) the Slayer Statute applies to the circumstances alleged here; (2) "[u]nder the Texas Slayer Statute, Ross forfeited his interest" in the Hartford life insurance policy

15

"because [Ross] is a principal or an accomplice in willfully bringing about the death of the insured, Steven"; (3) "[t]here is no contingent beneficiary entitled to receive the Life Insurance Proceeds"; and (4) Robert, as the insured's nearest relative, is entitled to receive the Life Insurance Proceeds."

Viewing the record liberally and resolving any doubt in Robert's favor as we must, we hold that Robert has standing to obtain the declaratory relief he seeks. Robert alleged a legally protected interest in the life-insurance proceeds based on the provisions of the Slayer Statute, as applied to the pleaded facts. *Cf. Save Our Springs Alliance*, 304 S.W.3d at 882. Robert has also alleged facts showing that he is "aggrieved" because he has not received the insurance proceeds to which he claims he is entitled under the Slayer Statute.

The record also indicates that a real controversy exists between the parties regarding the insurance proceeds. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Hartford's interpleader petition indicated that it anticipated rival claims between Robert, Ross, and Steven's Estate, among others. At the hearing on the special exceptions, Ross's attorney ad litem disputed whether Robert's summary-judgment evidence proved that Ross had "wilfully" killed Steven, indicating a disagreement about whether Robert was entitled to the insurance proceeds and prompting the trial court to set the case for trial. Steven's Estate then filed a motion asking the trial court to award the interpleaded insurance proceeds to the estate, showing an actual

16

controversy between the parties regarding the interpleaded insurance proceeds. And finally, the declaratory relief sought by Robert—a determination that he is entitled to the insurance proceeds under the Slayer's Statute—would resolve the controversy between the parties regarding whether Robert is entitled to the proceeds and would afford Robert redress because the interpleaded funds would be awarded to him.

On appeal, the administrator for Steven's Estate asserts that Robert lacks standing because Robert cannot meet the statutory requirements of the Slayer Statute. He stresses that Robert is not a beneficiary under the life insurance policy and that, if there is a contingent beneficiary under the policy who has not forfeited his interest in the insurance proceeds, then Robert is not entitled to receive the proceeds pursuant to the Slayer Statute, as Robert claims. *See* TEX. INS. CODE §§ 1103.151, 1103.152.

The administrator observes that Ross is the only named contingent beneficiary in the life insurance policy. As discussed, for Robert to be entitled to the insurance proceeds, the Slayer Statute requires that Ross wilfully brought about Steven's death, as Robert alleged in his pleading. *See id.* § 1103.151.

The estate's administrator points out that the capital murder case against Ross is still pending. To show this, the administrator relies on a June 2019 order from the capital murder case in which the criminal trial court found Ross to be mentally

17

incompetent to stand trial for Steven's murder. The order stated that Ross had been determined to be mentally incompetent to stand trial since October 2015.

The estate's administrator asserts that, until a determination is made in the criminal case that "Ross committed acts that would bring his conduct within the auspices of the Texas slayer's rule," Robert has no standing to seek recovery of the insurance proceeds. However, in making this assertion, the administrator fails to recognize that the Slayer Statute does not require that any criminal case relating to whether the beneficiary wilfully brought about the insured's death be resolved before the wilfulness determination is made. *See id.* §§ 1103.151, 1103.152; *see also In Re Estate of Stafford*, 244 S.W.3d 368, 370 (Tex. App.—Beaumont 2008, no pet.) ("Section 1103.151 does not require a 'final conviction' before a beneficiary forfeits his rights to the [insurance] proceeds.").

The administrator of Steven's Estate also points out that "[t]he administration of [the] estate and an application for determination of heirship is currently pending" in the probate court in a separately filed case. He argues that Robert does not have standing to make a claim that the Slayer Statute entitles him to the insurance proceeds in this case because the probate court, in the administration proceeding, has not yet determined whether Robert is Steven's heir or his "nearest relative." The administrator asserts that the probate court, in the administration proceeding, "has exclusive original jurisdiction to determine Steven's heirs and next of kin," including

18

whether Robert is Steven's "nearest relative." But, as the administrator recognizes, assets like life-insurance proceeds, are non-probate assets. *See* TEX. ESTATES CODE § 111.052; *see also Tramel v. Estate of Billings*, 699 S.W.2d 259, 262 (Tex. App.—San Antonio 1985, no writ) ("It is plain the right to the [insurance] proceeds does not accrue as a testamentary right to those who will take under the laws of descent and distribution."). And nothing in the Slayer Statute requires that the determination of who is the insured's "nearest relative" be made as part of the heirship determination in the probate proceedings of the deceased's estate. *See* TEX. INS. CODE § 1103.152.

The estate's administrator further claims that, even if Ross is determined to have forfeited his rights to the insurance proceeds, Robert would still not have an interest in the proceeds because the administrator is a "default" contingent beneficiary under the life insurance policy. In making this assertion, the administrator relies on a provision in the policy, which states that—if no named beneficiary survived Steven—Hartford then had the right to pay either: (1) the executors or administrators of Steven's Estate; (2) Steven's surviving spouse; (3) Steven's surviving children in equal shares; or (4) Steven's surviving parents in equal shares.[5]

---

[5]    Although Steven's Estate gave no reason for its entitlement to the insurance proceeds in its motion asking the proceeds to be distributed, the trial court cited this provision of the life insurance policy as a basis to award the insurance proceeds to

The administrator asserts that—because LaQuita did not survive Steven, Ross is Steven's only child, and Steven's parents were alleged to have predeceased Steven—the administrator would be the only "default" contingent beneficiary under the policy, and, as the only remaining contingent beneficiary under the life insurance policy, the estate's administrator would be entitled to the insurance proceeds. The administrator contends that, under this interpretation of the insurance policy, Robert would not have a stake in the insurance proceeds and thus would have no standing.

We reject this argument, as well as the other arguments raised by the administrator regarding Robert's standing. "[W]hether a plaintiff has established his right to go forward with [his] suit or satisfied the requisites of a particular statute pertains in reality to the right of the plaintiff to relief rather than to the [subject-matter] jurisdiction of the court to afford it." *Pike v. EMC Mgmt., LLC*, 610 S.W.3d 763, 777 (Tex. 2020) (internal quotation marks omitted) (citing *Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000)). "[A] plaintiff does not lack standing in its proper, jurisdictional sense simply because he cannot prevail on the merits of his claim." *Id.* at 774 (internal quotation marks omitted) (citing *Meyers*, 548 S.W.3d at 484–85).

---

Steven's Estate in the findings of fact and conclusions of law issued by the court in support of its order distributing the funds to the estate. The trial court stated that, "[u]nder the clear language of the life insurance policy," if Ross is disqualified as a beneficiary by the Texas Slayer Statute, then "the awarded benefits default to the estate."

Here, each of the administrator's arguments regarding why Robert lacks standing pertain to whether Robert can satisfy the statutory requirements of the Slayer Statute or whether he can prevail on the merits of his claim. Therefore, the administrator's arguments do not demonstrate that Robert lacks standing to request declaratory relief to determine his rights under the Slayer Statute.[6] *See id.*

As discussed above, Robert's pleading and the record demonstrate that Robert has "a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *See Lovato*, 171 S.W.3d at 848. There is a real controversy between the parties that will be determined by the judicial declaration sought by Robert regarding his entitlement to the life-insurance proceeds. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Accordingly, we hold that Robert has standing to pursue his claim for declaratory relief.[7]

---

[6] In his brief, the estate's administrator requests that we take judicial notice (1) of the June 2019 order from the criminal case against Ross, showing that Ross had been found to be mentally incompetent to stand trial for Steven's murder since 2015, and (2) of other pending cases relating to the deaths of Steven and LaQuita. *See* TEX. R. EVID. 201. However, even if we were take judicial notice the facts requested by the administrator, it would not change our analysis or conclusion regarding the issue of Robert's standing.

[7] In his reply brief, Robert requests that we hold that Steven's Estate lacks standing to pursue a claim for the life insurance proceeds. In making this argument, Robert—like the administrator with respect to Robert's standing—focuses on the merits of the estate's claim to the proceeds. As mentioned, a party does not lack standing "in its proper, jurisdictional sense simply because [it] cannot prevail on the merits of [its] claim." *Pike v. EMC Management, LLC*, 610 S.W.3d 763, 777 (Tex. 2020) (internal quotation marks omitted) (citing *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484–85 (Tex. 2018). We are also mindful that appellate courts

**Motion for New Trial**

In his third issue, Robert contends that the trial court abused its discretion when it denied his motion for new trial. In his motion, Robert argued that he had been denied due process because the trial court considered and granted the administrator's motion to distribute the life-insurance proceeds to Steven's Estate without setting the motion for hearing or for submission and without providing notice to Robert that the motion would be considered by the trial court.

## A. Standard of Review

We review a trial court's denial of a motion for new trial for abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (citing *Director, State Emps. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994)). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules of principles. *In re Cerberus Capital Mgmt.,*

---

generally must remand a case to afford parties an opportunity to amend their pleadings to cure a jurisdictional problem when the jurisdictional issue arose for the first time on appeal. *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 558–59 (Tex. 2016). Remand is unnecessary if a party would be unable to amend his pleadings to invoke the trial court's jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96 (Tex. 2012). We note that, although the administrator filed a motion in the trial court seeking distribution of the proceeds to the estate, the administrator did not file a claim that set out the basis for the estate's entitlement to the proceeds. Given the lack of a filing explaining the basis for the estate's claim, and the administrator's argument raised on appeal that the estate is entitled to the insurance proceeds as a contingent beneficiary under the policy, we cannot say that remand is unnecessary. *Cf. id.*

*L.P.*, 164 S.W.3d 379, 382 (Tex. 2005); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

**B.  Analysis**

The Fourteenth Amendment of the United States Constitution protects against deprivation of life, liberty, or property by the State "without due process of law." U.S. CONST. amend. XIV, § 1. Once a party, such as Robert, has made an appearance in a case, he is entitled to notice of a dispositive hearing or submission as a matter of due process. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988); *LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390, 390–91 (Tex. 1989) (per curiam). Failure to give proper notice "violates 'the most rudimentary demands of due process of law.'" *Peralta*, 485 U.S. at 84 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965)). Due process requires that parties receive notice "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)); *see Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). In short, due process requires notice "at a meaningful time and in a meaningful manner" that would enable a party that would be bound by a court's judgment to have an opportunity to be heard. *Peralta*, 485 U.S. at 86; *see Univ. of Tex. Med. Sch. v. Than*,

23

901 S.W.2d 926, 930 (Tex. 1995). "[A] judgment entered without notice or service is constitutionally infirm." *Peralta*, 485 U.S. at 84.

Here, the complained-of order, dated September 23, 2019, states, "On this day, the [administrator's motion to distribute the interpleaded funds to Steven's Estate] was considered by this Court and the Court finds that such Motion should be granted." In findings of fact and conclusions of law, signed by the trial court on October 23, 2019, the trial court stated that it had considered the administrator's motion on September 9, 2019. In any event, regardless of which date the trial court "considered" the administrator's motion, Robert correctly pointed out in his motion for new trial, as supported by his attorney's affidavit, that there is no indication in the record that the administrator's motion was set for a hearing or for submission at any point before the dispositive motion was considered and granted by the trial court. The record does not contain a notice of submission or a notice of a hearing for the administrator's motion. Although the certificate of service for the motion shows that the motion was sent to Robert's attorney, there is no indication in the record that Robert received notice, either actual or constructive, of the date the motion would be "considered." *Cf. Johnson v. Harris Cty.*, 610 S.W.3d 591, 595 (Tex. App.— Houston [14th Dist.] 2020, no pet.) (recognizing that "[t]he certificate of service in the summary-judgment motion *and the notice of submission* of the motion raised a

presumption that [the appellees] served each document and [appellant] received each document" (emphasis added)) (citing, inter alia, TEX. R. CIV. P. 21a(e)).

In his affidavit supporting Robert's motion for new trial, Robert's attorney, Kitner, stated that Ross's attorney ad litem had indicated in an email to Kitner that the attorney ad litem had not answered Robert's discovery requests because the estate's administrator had filed the motion to distribute the funds the previous week. Ross's attorney ad litem stated to Kitner, "We were told that the case was not going to proceed pending the hearing on this motion. If the motion is denied and the case proceeds, we will answer your discovery."

Kitner testified in his affidavit that this "was the first indication to Robert that the [trial court] was considering [the administrator's motion to award the interpleaded funds to Steven's Estate] as grounds for a stay of trial, as neither Robert nor his counsel had previously received any notice from the [trial court] or any other party." Kitner stated that, on August 30, 2019, he "discovered that on August 16, 2019, the [trial court had] made a docket entry reciting, 'Stay in regard to the trial pending on March 17, 2020.'" But Kitner also testified that the estate's administrator "never requested" the trial court "[to] schedule a hearing" on his motion to distribute the interpleaded funds to Steven's Estate, "nor did [the administrator] request the [trial court] to consider it by submission, nor did he (or the [trial court], or [Ross's attorney ad litem], or anyone else) ever provide any sort of notice to Robert or his

25

counsel" that the administrator's motion to distribute the interpleaded funds "would be considered by the [trial court] at any particular time." Kitner testified that, "[o]n September 25, 2019, without any hearing or notice to Robert or his counsel, and with no acknowledgement or lifting of the 'stay,' the [trial court] spontaneously granted [the administrator's motion]." No party filed a response to Robert's motion for new trial before it was denied by the trial court on the next business day after it was filed.

The record, along with Kitner's affidavit, established that Robert did not receive notice of when the trial court was considering the administrator's dispositive motion to distribute the interpleaded insurance proceeds. We conclude that Robert was denied fundamental due process when the trial court signed the order granting the administrator's motion because Robert was deprived of notice and an opportunity to be heard at a meaningful time and in a meaningful manner on the motion. *See In re Office of Att'y Gen. of Tex.*, No. 13-20-00133-CV, 2020 WL 1951544, at *5 (Tex. App.—Corpus Christi Apr. 23, 2020, orig. proceeding [mand. conditionally granted]) (mem. op.) (holding Office of Attorney General's due-process rights were violated when trial court granted father's motion to release child-support lien without providing Office of Attorney General notice that trial court intended to rule on motion, and court did not hold hearing before signing order granting motion); *Matter of Guardianship of Guerrero*, 496 S.W.3d 288, 292 (Tex. App.—San Antonio 2016, no pet.) (holding that husband was denied due process

26

when he did not receive notice of hearing at which his wife's daughter was appointed wife's permanent guardian); *Garcia v. Escobar*, No. 13–13–00268–CV, 2014 WL 1514288, at *3 (Tex. App.—Corpus Christi Apr. 15, 2014, pet. denied) (mem. op.) ("Absence of actual or constructive notice of the submission of a summary judgment motion violates a party's due process rights under the Fourteenth Amendment to the United States Constitution."); *Campbell v. Stucki*, 220 S.W.3d 562, 570 (Tex. App.—Tyler 2007, no pet.) (holding that trial court violated due process, even though appellant received notice of hearing regarding motion to release funds following garnishment, because trial court granted motion before scheduled hearing date and did not actually hold hearing); *see also Peralta*, 485 U.S. at 86–87 (holding harm analysis not required for reversal when party was "deprived of property in a manner contrary to the most basic tenets of due process").

Because Robert was denied due process, we hold that the trial court abused its discretion when it denied Robert's motion for new trial. *See Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc*., 300 S.W.3d 348, 364 (Tex. App.—Dallas 2009, no pet.) (holding that trial court erred when it denied appellant's motion for new trial because appellant's due-process rights were violated when appellant was "deprived of notice and an opportunity to be heard at a

meaningful time and in a meaningful manner" on appellee's no-evidence motion for summary judgment). We sustain Robert's third issue.[8]

## Conclusion

We reverse the trial court's Order on Motion to Close and Distribute Funds in Registry of the Court to the Estate of Steven Ross Lawrence, Deceased, which orders (1) the interpleaded life-insurance proceeds to be paid to Steven's Estate, care of the estate's administrator, and (2) closes the account in the trial court's registry.[9] We remand the case to the trial court for further proceedings.

Richard Hightower
Justice

Panel consists of Justices Kelly, Landau, and Hightower.

---

[8] Because Robert's third issue is dispositive and affords him the same relief that he requests in his first two issues, we do not address Robert's first and second issues. *See* TEX. R. APP. P. 47.1.

[9] The trial court's July 29, 2015, order granting the petition in interpleader, ordering that Hartford was "discharged with prejudice from this lawsuit" and "relieved from all claims to the proceeds," and awarding Hartford its attorney's fees is unchallenged here and is unaffected by the disposition of this appeal.